Frederick J. **DIVEN**, et al., Appellants,

v.

**AMALGAMATED TRANSIT UNION INTERNATIONAL AND LOCAL 689,** Amalgamated Transit Union, Appellees.

No. 93–7075.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1994.

Decided Nov. 1, 1994.

---

Arthur L. Fox, II, argued the cause and filed the briefs, for appellants.

Douglas Taylor argued the cause and filed the brief, for appellees. With him on the brief, was Neal Goldfarb. Earle W. Putman entered an appearance, for appellee Amalgamated Transit Union Intern. Martin P. Hogan entered an appearance, for appellee Local 689, Amalgamated Transit Union.

Before SILBERMAN, SENTELLE, and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

SILBERMAN, Circuit Judge:

Appellants challenge the district court's refusal to exercise supplemental jurisdiction over appellants' non-federal claims against appellee Local Union 689. Local 689 is the exclusive bargaining representative of employees of the Washington Metropolitan Area Transit Authority ("WMATA"), a joint project among, and political subdivision of, the District of Columbia, Maryland, and Virginia. Appellants seek to assert non-federal claims against Local 689 in an otherwise federal lawsuit against the local's national affiliate. Since appellants' non-federal claims against the local union predominate over the related federal cause of action against the national union, we affirm the district court's decision.

## I.

Appellants, members of Local 689 of the Amalgamated Transit Union International ("ATU"), were fined over the course of several local union meetings by the local president, Thomas, for speaking in a manner deemed "disruptive" of those meetings. The fines were levied pursuant to local union bylaw § 12(b), which authorizes the president summarily to discipline members for disrupting meetings. In issuing fines, the president did not refer to the ATU's constitution or its policies regarding member speech, but appellants brought (untimely) appeals to the international union, seeking to have the fines declared invalid under substantive and procedural provisions of the national union constitution. The ATU did not act, and the local union successfully extracted the fines from appellants. Appellants then sued in the district court, alleging violations by both the local and international unions of appellants' free speech rights, as protected in Title I of the Labor Management Reporting and Disclosure Act ("LMRDA" or "Landrum–Griffin Act"), 29 U.S.C. § 411, as well as contractual violations by the local.

Appellants claimed that the local had violated the Landrum–Griffin Act outright, by curtailing members' speech. The local was also said to have violated its members' contractual rights by disregarding substantive protections of the Landrum–Griffin Act, which are guaranteed in the ATU constitution and incorporated by reference in the local bylaws. Appellants further claimed that the local had violated contractual procedural protections for members set forth in the international union's constitution, as well as its own bylaws regarding the discipline of members.

For its part, the ATU was alleged not to have followed its own procedures for review of member discipline, as well as to have violated the Landrum–Griffin Act less directly. The ATU's constitution includes a § 22.6, which bans members' speech conducive to "dissension or subver[sion]" of the interest and harmony of the national union, but the constitution also contains a savings clause, § 22.7, to the effect that nothing in § 22.6 can be read to undermine Landrum–Griffin's Title I free speech rights. Appellants claim that, notwithstanding the savings clause, § 22.6 is facially inconsistent with Landrum–Griffin and has an illegal chilling effect by providing "aid and comfort to local officials' efforts to stifle" members' speech. The offending clause, in other words, although not referred to by the local officials, nevertheless had encouraged their allegedly illegal behavior. Accordingly, appellants sought declaratory and injunctive relief against the local, recovery of the fines, and an order excising § 22.6 from the ATU's constitution.

The local union moved to dismiss the case on jurisdictional grounds, arguing that appellants' only cognizable claim against it was based on D.C. law—even if the non-federal question implicated Landrum–Griffin by virtue of successive contractual incorporations— and that therefore federal question jurisdiction was lacking. Appellants responded that a federal question had at least been raised against ATU if not also against the local, and the state contract claim against the local defendants was so closely related to the federal claim that the district court was obliged to assert "supplemental" jurisdiction over the contractual claim per the new supplemental jurisdiction statute. 28 U.S.C. § 1367. The district court declined to do so. It believed that appellants' federal claim under both the Landrum–Griffin Act and the Taft–Hartley Act could not be brought against the local because neither Act covers unions composed solely of employees of state or municipal governments. While the federal claim against the *international union* remained, the district court ruled it would be inappropriate to exercise supplemental jurisdiction over the state law contractual claims against the local. The district judge thought that to exercise supplemental jurisdiction over appellants' contractual claim, which also asserted that the local was bound to observe Landrum–Griffin, would be to "admit at the back door that which has been legislatively turned away at the front door." (citing *Stencel Aero Eng'g Corp. v. United States*, 431 U.S. 666, 673, 97 S.Ct. 2054, 2059, 52 L.Ed.2d 665, *reh'g denied*, 434 U.S. 882, 98 S.Ct. 250, 54 L.Ed.2d 168 (1977)). The determination of the district judge was certified under FED. R.CIV.P. 54(b) for our review.

## II.

■ Much of appellants' argument is directed against the district court's reasoning. Appellants particularly object to the notion that Congress' determination not to cover unions composed only of employees of state or local governments under Landrum–Griffin should bear on the supplemental jurisdiction question. We quite agree with appellants that the two issues are analytically different—in other words, the congressional decision not to *cover* employees of political subdivisions under federal labor law does not amount to a directive to keep all such employees' claims *out of* federal court under any circumstances. *See Rogers v. Platt*, 814 F.2d 683, 688 (D.C.Cir.1987). We think, however, that the district court's decision can be read, and should be read, as a determination, under the supplemental jurisdiction statute, that the state claim substantially predominates over the federal claim.

What used to be called pendent jurisdiction—the discretionary exercise of federal jurisdiction over a related state claim, *see United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)—was superseded by the supplemental jurisdiction provisions in the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5113. The statute seemingly speaks in directory language: jurisdiction "shall" be extended to the state claim if the federal claim properly supports original jurisdiction, if the claims arise out of a common nucleus of operative fact, and if no one of four exceptions obtains:

(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or

claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

■ The extent to which the trial judge's traditional discretion has been cabined by this legislation—or in what manner—is a matter of some debate. *Compare Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277, 1284 (3d Cir.1993) (§ 1367(c) incorporates *Gibbs* factors) *with LaSorella v. Penrose Saint Francis Healthcare Sys.,* 818 F.Supp. 1413, 1415 (D.Colo.1993) (§ 1367 "greatly expands" supplemental jurisdiction); *see also Executive Software v. U.S. Dist. Court,* 24 F.3d 1545, 1556–58 (9th Cir.1994). Appellant understandably argues that the district judge, under the Act, was obliged to exercise supplemental jurisdiction; that he had no discretion to refuse to hear the claims against the local. We disagree. The judgment of the district court comes into play at several points in § 1367, including the threshold inquiry under § 1367(a) as to whether a party raises a legitimate—and legitimately related—federal claim. Certainly, a determination as to whether the state claim "substantially predominates" over the federal is not one that admits to a mechanistic application, nor is the question whether the claim raises a "novel or complex" issue of state law (which could be said to apply to this case as well) or whether there are "other compelling reasons" for refusing to extend federal jurisdiction. Despite Congress' use of "shall," the statute fairly exudes deference to judicial discretion—at least once the threshold determinations have been met and the court moves on to consider the exceptions. It follows that our review of the district court's judgment must be quite deferential; the abuse of discretion standard applies. *See Fin. Gen. Bankshares, Inc. v. Metzger,* 680 F.2d 768, 722 (D.C.Cir.1982); *see also Cushing v. Moore,* 970 F.2d 1103, 1110 (2d Cir. 1992).

■ To be sure, appellants do make a rather strained argument that their LMRDA claim against the local is itself federal.

WMATA, they maintain, should be thought to be something other than a state or local entity. While we have not decided WMATA's status as a governmental entity in precisely this context, that status appears on reflection to be abundantly clear. WMATA is a political subdivision of two states, and the presence of the District of Columbia in the compact does nothing to alter the nature of WMATA as a political subdivision. *See* Washington Metropolitan Transit Authority Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966), *codified at* D.C.CODE ANN. § 1–2431 (1992) *and* MD.TRANSP.CODE ANN. §§ 10–203, 10–204 (Michie 1977); VA.CODE ANN. §§ 56–529, 56–530 (Michie 1986) (not set out); *Morris v. Washington Metro. Area Transit Auth.,* 781 F.2d 218, 222–28 (D.C.Cir.1986) (upholding governmental status and sovereign immunity of WMATA); *see also Colbert v. United States,* 601 A.2d 603, 605 (D.C. 1992). WMATA thus does not constitute an "employer" nor do employees of WMATA belong to a "labor organization" within the meaning of the LMRDA. *See* 29 U.S.C. § 152(2)–(3), (5) (defining "employer" not to include "any State or political subdivision thereof" and defining "labor organization" as "any organization ... which exists for the purpose ... of dealing with employers"); *see also Hawaii Gov't Employees Ass'n, Local 152 v. Martoche,* 915 F.2d 718, 721–22 (D.C.Cir.1990); *Smith v. Office & Professional Employees Int'l Union,* 821 F.2d 355, 356 (6th Cir.1987).

Appellants further argue that the claim against the local could be thought to rest on § 301 of the Taft–Hartley Act—under the theory that the members were third-party beneficiaries of a contract between the local and the international. *See* 29 U.S.C. § 185 ("Suits for violation of contracts ... between any such *labor organizations,* may be brought in any district court of the United States having jurisdiction of the parties") (emphasis added); *Wooddell v. International Bhd. of Elec. Workers, Local 71,* 502 U.S. 93, —— ——, 112 S.Ct. 494, 498–501, 116 L.Ed.2d 419 (1991) (individual union member may sue on contract between national and local union). That argument founders, however, on the same rock that blocks the Land-

rum–Griffin action against the local; both statutes use the same definition of "labor organization," and the local qualifies under neither. *Chaparro–Febus v. Local 1575*, 983 F.2d 325, 329 (1st Cir.1992) (noting exclusion of "political subdivisions" from "employer" coverage under Labor Management Relations Act).

There remains the federal claim against ATU—that it, through its constitution or in some other ill-defined way, provided moral or psychological support for the local's imposition of punishment upon appellants. We cannot help but note, however, as we think did the district court, that the claim against the ATU, in the absence of any allegation that its officials actually communicated with the local with regard to the events at issue, is rather frail, even though that claim has survived a summary judgment motion. Section 22.6 of the ATU constitution would certainly, if it stood by itself, be violative of the Landrum–Griffin Act, but we do not understand how it can be given any weight in light of the savings clause, § 22.7.

■ Of course neither the district court nor we, at this stage and on this record, can definitively pronounce on the validity of appellants' federal claim against the ATU, but the apparent weakness of the claim—even before discovery—is, under these circumstances, a factor to be weighed in determining whether the state claim "substantially predominates." *See Turner Broadcasting Sys., Inc. v. FCC*, 810 F.Supp. 1308 (D.D.C. 1992) (describing § 1367(a) as a threshold inquiry but applying § 1367(c)(2) despite doubts regarding the relatedness of state to federal claims).

■ The relative weakness of the federal claim and concomitant primacy of the state law issues are evident when examining the factual and legal bases for appellants' claims. The injury to appellants was caused directly by the local, and all of the complex arguments that appellants marshal to contend that the local's actions are illegal require resolution under D.C. law, even the claim that the local's bylaws have implicitly incorporated concepts of federal law. Inclusion of a federal statute in a private contract does not, of itself, create federal subject matter jurisdiction. *See, e.g., Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 809–10, 106 S.Ct. 3229, 3232–33, 92 L.Ed.2d 650 (1986). The contractual claims are subtle—much more so than the labored federal claim—and therefore it is impossible to quarrel with the district court's implicit determination that the state claim predominates. In general, "[t]he question of whether state law predominates ... must be answered by looking to the nature of the claims as set forth in the pleading and by determining whether the state law claims are more complex or require more judicial resources to adjudicate *or are more salient in the case as a whole than the federal law claims.*" *Moore v. DeBiase*, 766 F.Supp. 1311, 1319 (D.N.J.1991) (emphasis added) (footnotes omitted). Combined, then, with the weakness of the federal claim against the international, we have little difficulty in concluding that the district court did not abuse its discretion in refusing jurisdiction. *See Hudson County News Co. v. Metro Assoc. Inc.*, 141 F.R.D. 386, 392–93 (D.Mass. 1992) (declining to exercise supplemental jurisdiction where federal claim "is attenuated to the point of being hypothetical"); *see also Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Indus., Inc.*, 793 F.Supp. 120, 123 (D.Md.1992).

\* \* \*

Accordingly, we affirm the district court's refusal to exercise supplemental jurisdiction over the claims against the appellee local union. The order below dismissing appellants' claims against the local union for want of jurisdiction is affirmed.

*So ordered.*